# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00612-CR

**John Adam Chandler, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-96-404, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## O P I N I O N

John Adam Chandler appeals from the revocation of his deferred-adjudication community supervision term and adjudication of guilt for aggravated assault. Chandler contends that this adjudication was improper because he had already been adjudicated guilty for this offense in 2001 when he was adjudicated guilty on a companion count of deadly conduct. We will affirm the judgment.

## BACKGROUND

Chandler's appeal follows a series of pleas, revocations, and adjudications arising from charges filed in 1996. He was originally indicted for threatening a person with imminent bodily

injury by using a firearm, for discharging a firearm at a person, and for discharging a firearm at a habitation with disregard for the substantial risk that the habitation was occupied.

In 1997, Chandler pled guilty to one count of aggravated assault and two counts of deadly conduct. The clerk's record contains two orders of deferred adjudication community supervision signed on September 4, 1997. By separate orders, the court deferred adjudication of guilt for aggravated assault and for deadly conduct, and placed Chandler on community supervision for six years. Although the term of the community supervision was one year longer than Chandler had agreed to accept, there is no indication in the record that he challenged this term.

On March 9, 1999, the State moved to adjudicate Chandler guilty on the aggravated assault charge. The State alleged that Chandler violated the terms of his community supervision by failing to obey all the orders of the court and his supervision officer, failing to report to his supervision officer once, failing several times to make required payments, and failing to perform required community service. Chandler admitted these violations and waived his right to appeal the conviction and sentence concerning his aggravated-assault offense. By order dated July 15, 1999, the court extended Chandler's period of supervision by two years through September 3, 2005, although the order does not specify the charge for which the supervision is imposed.

On January 18, 2000, the State moved to adjudicate Chandler guilty on the deadly conduct charge. The State alleged failings similar to those Chandler admitted in 1999. On June 15, 2000, the State filed an amended motion to adjudicate the deadly conduct charge, citing an incident of theft. In a judgment dated November 14, 2000, the court revoked Chandler's community

2

supervision, adjudicated him guilty of the offense of deadly conduct, and assessed sentence at five years in prison.

On March 20, 2001, Chandler moved to have execution of his prison sentence suspended and to be placed on community supervision. In the body of the motion, he asserted that he had been convicted for the offense of aggravated assault and was eligible for community supervision after having served 180 days in prison pursuant to the court's sentence. The order of commitment attached to Chandler's motion, however, recited that he had been adjudged guilty of deadly conduct. The court granted the motion and placed Chandler on community supervision for five years. In its order granting community supervision after a sentence of incarceration, the court did not specify for what offense this term was assessed.

Thereafter, the State filed a series of documents seeking to revoke the different community supervision terms. On January 8, 2003, the State moved to revoke Chandler's community supervision for the deadly conduct offense for which he had been sentenced to five years in prison in November 2000; the State filed an amended motion to revoke on the same offense on April 7, 2003. On July 30, 2003, the State filed a motion for the court to take judicial notice of Chandler's conviction on July 1, 2003 for a different offense of aggravated assault. The motion recited that Chandler stood charged with "violating the terms of his Deferred Adjudication in connection with his Aggravated Assault prosecution as well [as] violating the terms of his Community Supervision in connection with his Deadly Conduct prosecution under the above styled cause number." On that same date, the State filed a motion to adjudicate Chandler guilty of the original aggravated-assault charge.

3

By judgment signed September 29, 2003, the court revoked Chandler's community supervision term for the original aggravated-assault offense and adjudicated him guilty of that offense. The court assessed sentence at twenty years in prison. Chandler filed a notice of appeal, but the district court certified that this "is a plea bargain case, and the defendant has NO right of appeal." There is no indication in this record of whether the district court took any action regarding the motion to revoke on the deadly conduct offense.

**DISCUSSION**

Chandler contends that, in its November 2000 judgment, the district court adjudicated him guilty of both the deadly conduct and the aggravated-assault offenses. He contends that the district court therefore could not again adjudicate his guilt and sentence him on the aggravated-assault offense in September 2003. He argues that, despite the district court's refusal to certify his right of appeal, this wrongful re-adjudication and re-sentencing is appealable.

Appeals from guilty pleas are limited. A defendant who pleads guilty and whose punishment does not exceed that which he agreed to accept can appeal only those matters raised by written motion filed and ruled on before trial or after getting the trial court's permission. Tex. R. App. P. 25.2(a)(2). When a defendant is charged with violation of a term of deferred-adjudication community supervision, he is "entitled to a hearing limited to the determination by the court of whether it proceeds with an adjudication of guilt on the original charge. No appeal may be taken from this determination." Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b) (West Supp. 2004-05).

4

But these limitations do not bar appeal in this case. Rule 25.2(a)(2) does not limit a defendant's right to challenge the process by which he was sentenced. *See Vidaurri v. State*, 49 S.W.3d 880, 885 (Tex. Crim. App. 1998).[1] Chandler does not challenge the original 1997 order deferring adjudication, but contends that the district court had no power to adjudicate him in September 2003 because he had already been adjudicated guilty in November 2000. Neither the rule nor the statute limits a defendant's right to appeal a judgment that the court lacked power to render. *See Nix v. State*, 65 S.W.3d 664, 668 (Tex. Crim. App. 2001); *Edwards v. State*, 106 S.W.3d 377, 379 (Tex. App.—Fort Worth 2003, no pet.) (post-revocation assessment of sentence in excess of statutory limit is appealable); *see also Ex parte Beck,* 922 S.W.2d 181, 182 (Tex. Crim. App. 1996). The nature of Chandler's challenge makes his appeal permissible.

Chandler contends that the district court had no power to adjudicate him guilty of aggravated assault in 2003 because it had already done so three years earlier when it adjudicated him guilty expressly only of deadly conduct. He makes this argument despite the language in the November 2000 judgment that mentions the deadly conduct offense but does not mention the aggravated assault. He notes that, when multiple charges for offenses arising out of the same criminal episode are prosecuted in a single criminal action, the sentences imposed for the separate

---

[1] Rather than order the trial court to prepare and file an amended certification at this late stage in the appellate process, the certification in the record shall be deemed amended so as to certify that this "is not a plea-bargain case, and the defendant has the right of appeal." *See* Tex. R. App. P. 25.2 comment (West 2003) (containing prescribed certification form).

convictions must be served concurrently. *See* Tex. Pen. Code Ann. § 3.03(a) (West 2003). He cites language from the court of criminal appeals that this amounts to "treating the separate offenses as one for sentencing purposes." *See Haliburton v. State*, 578 S.W.2d 726, 729 (Tex. Crim. App. 1979); *see also* Tex. Code Crim. Proc. Ann. art. 42.08(a) (West Supp. 2004-05) ("When the same defendant has been convicted in two or more cases, judgment and sentence shall be pronounced in each case in the same manner as if there had been but one conviction."). He argues that the district court treated these offenses as one when initially imposing the community supervision: he signed one plea agreement and received a single set of conditions for community supervision under a single cause number. He urges that the district court had no power to impose a sentence for the aggravated-assault conviction that exceeds the sentence previously imposed for the deadly conduct conviction, citing *Kimball v. State*, 119 S.W.3d 463, 465 (Tex. App.—Beaumont 2003, no pet.). In that case, the district court initially imposed a ten-year sentence, suspended execution of that sentence and assessed community supervision, and then revoked the community supervision and imposed a fifteen-year sentence; the Beaumont court concluded that the district court had exceeded its authority by imposing a fifteen-year sentence because that exceeded the ten-year sentence it had imposed originally. *Id*.

But we find nothing preventing courts from imposing different terms of imprisonment at different times on separate convictions for which identical terms of deferred-adjudication community supervision were originally imposed. Unlike in *Kimball*, no sentence was pronounced in this case when the original deferred-adjudication community supervision was assessed, so there is no discrepancy between the original and the current sentence. Although the court in this case

6

initially imposed identical community supervision terms for the aggravated assault and deadly conduct offenses, they remain separate offenses. The requirement in article 42.08(a) that the court pronounce judgment and sentence for multiple related convictions "as if" there were only one conviction does not mean that there is but one conviction. *See* Tex. Code Crim. Proc. Ann. art. 42.08(a). If the convictions actually melded into a single conviction, there would be no need to require concurrent sentences because there would be only one sentence; we will not reduce the concurrent sentence requirements to surplusage. We also find no requirement that sentences served concurrently be of identical length, even if they arise from simultaneously deferred adjudications that are later adjudicated separately. *See id.*; Tex. Pen. Code Ann. § 3.03(a). Nor do we find any impediment to the district court separately revoking terms of deferred-adjudication community supervision that were initially imposed at the same time. The only apparent limitation in addition to the concurrence requirement is the range of punishment contained in the statutes. *See* Tex. Pen. Code §§ 12.33 (second-degree felony punishable by two to twenty years in prison) and 12.34 (third-degree felony punishable by two to ten years in prison); *see also id.* §§ 22.02(b) (standard aggravated assault is second-degree felony) and 22.05(b), (e) (deadly conduct of discharging firearm at or in direction of people or building with recklessness regarding its occupation is third-degree felony). Both punishments assessed are within these ranges.

Our conclusion might be different if the State were attempting to manipulate the system to effectively stack the sentences for these separate offenses—*i.e.*, by waiting to revoke the deadly conduct offense until after the twenty-year sentence for aggravated assault is served—in order to impose a longer aggregate period of imprisonment than could have been imposed at the time of

7

the original guilty plea. *See O'Hara v. State*, 626 S.W.2d 32, 35 (Tex. Crim. App. 1981) ("court has no power to cumulate any sentence not originally ordered to be served cumulatively"); *see also Ex parte Sims*, 868 S.W.2d 803, 804 (Tex. Crim. App. 1993). But there is no evidence of such manipulation here. Instead, the State and the courts have given Chandler the benefit of an array of community supervision options. Chandler has violated the terms of his community supervision, beginning with his failure to comply with technical provisions of his community supervision (reporting to his supervision officer and paying required fees), and progressing through additional offenses of misappropriation of property, driving while intoxicated, and another aggravated assault. Chandler may have the right to seek credit against the sentence for this aggravated-assault conviction based on pre-shock-probation prison time served on the deadly conduct sentence, but that question is not before us.

The district court acted within its power in adjudicating Chandler's guilt for aggravated assault and sentencing him to twenty years. The 2000 adjudication of guilt for the offense of deadly conduct did not constitute an adjudication of guilt for the related offense of aggravated assault. Chandler was still under deferred-adjudication community supervision for the aggravated-assault offense in 2003. The court did not err by revoking that term of supervision and adjudicating his guilt for aggravated assault in 2003.

**CONCLUSION**

Concluding that the district court had the power to revoke the term of deferred-adjudication community supervision imposed for the aggravated-assault offense despite having three

8

years earlier revoked a similar term for a companion offense of deadly conduct, we affirm the judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   March 24, 2005

Publish

9